## SUPREME COURT.

EDMUND S. MILLER agt. THE NEW-YORK & ERIE RAILROAD
COMPANY.

A corporation having the right to contract an obligation for a specific purpose,
have also the right to issue *any instrument* which either party may consider
convenient in acknowledgment of it.

The act of 1848 having conferred on the defendants the power to borrow money
to be applied to the construction of their railroad and fixtures, they have also
the power to give their *bonds* in payment thereof, independent of the act of
1850, which gives to the defendants a right to issue their bonds for money bor-
rowed, and the power to confer on any holder of such bond the right to con-
vert the principal due into *stock* of the company.

*New-York Special Term, June,* 1859.
DEMURRER to complaint.

D. B. EATON, *for defendants.*
IRA O. MILLER, *for plaintiff.*

CLERKE, Justice.   The act of 1848, relative to railroad com-
panies, enacts that all existing railroad companies in this state
shall possess all the powers contained in this act (*Laws of* 1848,
§ 46.)   That act (section 17, subdivision 10), allows them to
borrow money to be applied to the construction of their rail-
road and fixtures.

The bond upon which this action is brought, was made on
the 1st day of March, 1849, and the complaint alleges that it
was issued by the defendants for the extension of their road
west of Binghamton.   This sufficiently shows that it was for
the purpose stated in the act, nor are we to presume that it
was for the purpose of extending it beyond its limits in this
state.   But it is maintained that no authority is expressly given,
by any act previous to that of 1850, " to issue bonds."   This
was not necessary.   If the company were allowed " to borrow
money " it is of little consequence in what manner or by what

description of instrument they acknowledged the indebtedness and promised payment. The counsel for the defendants, however, argues because the act of 1850 gives the power to issue bonds, the legislature must have understood that in 1849 no right to issue bonds existed. This would not, by any means, be a legitimate inference. The power to borrow, given by the act of 1848, was not accompanied, as we have seen, by any restriction as to the manner of evidencing the debt. On examing the act of 1850, where the powers of the act of 1848 are enumerated in an extended form (*Laws of* 1850, *p.* 225, § 10), it will be found that the right to issue bonds is indeed given, but it seems to be introduced rather for the purpose of an additional power, which it was deemed expressly to provide for, namely, giving the directors the power to confer on any holder of a bond, issued for money borrowed, the right to convert the principal due into stock of the company.

There is nothing in this act, or in any act, ignoring the idea that a corporation, having the right to contract an obligation for a specific purpose, has also the right to issue any instrument which either party may consider convenient in acknowledgment of it.

The complaint is in every respect sufficient; at least, it contains no defects which can be taken advantage of by demurrer. The plaintiff is not obliged to allege that it was *necessary* to issue the bond, or that the money was borrowed for "the completion, furnishing or operating of the road." If the money was borrowed after 1850, this language may be requisite; but the money in question was borrowed under the power given by the act of 1848.

The demurrer must be overruled with costs, with liberty to defendants to answer within twenty days.